STEVEN H. FRANKEL (State Bar No. 171919)
SONNENSCHEIN NATH & ROSENTHAL LLP
525 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 882-5000
Facsimile: (415) 882-0300
Email: sfrankel@sonnenschein.com

LAURA A. WYTSMA (State Bar No. 189527)
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 1500
Los Angeles, California 90017
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
Email: lwytsma@sonnenschein.com

ALEXANDER J. HADJIS
RICHARD G. GREEN
SONNENSCHEIN NATH & ROSENTHAL LLP
1301 K Street N.W.
Suite 600, East Tower
Washington, DC 20005-3364
Telephone: (202) 408-6400
Facsimile: (202) 408-6399
Email: ahadjis@sonnenschein.com
       rgreen@sonnenschein.com

Attorneys for Defendants
CMC MAGNETICS CORP., HOTAN CORP., and
KHYPERMEDIA CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CMC MAGNETICS CORP., HOTAN CORP., and KHYPERMEDIA CORP., <br><br> Defendants. | Case No. C 06-04538 HRL <br><br> ANSWER AND COUNTERCLAIM OF DEFENDANTS CMC MAGNETICS CORP., HOTAN CORP., AND KHYPERMEDIA CORP. <br><br> DEMAND FOR JURY TRIAL |

Defendants CMC Magnetics Corporation (CMC), Hotan Corporation (Hotan), and KHypermedia Corporation (KHypermedia) (collectively, "Defendants") respond to the allegations in the Complaint filed by Plaintiff Matsushita Electric Industrial Co., Ltd. (MEI) on July 26, 2006, and further allege as follows:

## ANSWER

1. Defendants admit that the Complaint purports to state a cause of action arising under the patent laws of the United States (Title 35, U.S.C., section 271 et seq), and that MEI has requested damages and a permanent injunction. Defendants deny that they infringe the asserted patents and that the asserted patents generally relate to the field of recordable DVDs. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 1 of the Complaint, and therefore deny the same.

2. Defendants lack sufficient information to admit or deny the allegations in Paragraph 2 of the Complaint, and therefore deny the same.

3. Defendants KHypermedia and Hotan deny that they are in the business of manufacturing recordable information media. Defendants admit the remaining allegations in Paragraph 3 of the Complaint.

4. Defendants admit the allegations in Paragraph 4 of the Complaint.

5. Defendants admit that the Court has personal jurisdiction over Defendants, and that Hotan and KHypermedia are organized under the laws of the State of California. Defendants deny the remaining allegations in Paragraph 5 of the Complaint.

6. Defendants admit that venue is proper in this judicial district, but deny the remaining allegations in Paragraph 6 of the Complaint.

7. Defendants deny the allegations in Paragraph 7 of the Complaint.

8. The responses to paragraphs 1-7 are incorporated herein by reference in response to Paragraph 8 of the Complaint.

9. Defendants admit that U.S. Patent No. 4,847,132 (the '132 patent) bears the title "Protective Layer for Optical Information Recording Medium," that it names Masatoshi Takao, Kunio Kimura, Toshimitsu Kurumizawa, and Kenichi Nagata as inventors, and that it

was issued on July 11, 1989. Defendants deny, however, that the '132 patent was duly and legally issued. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 9 of the Complaint, and therefore deny the same.

10. Defendants deny the allegations in Paragraph 10 of the Complaint.

11. Defendants deny the allegations in Paragraph 11 of the Complaint.

12. Defendants deny the allegations in Paragraph 12 of the Complaint.

13. The responses to paragraphs 1-7 are incorporated herein by reference in response to Paragraph 13 of the Complaint.

14. Defendants admit that U.S. Patent No. 5,790,487 (the '487 patent) bears the title "Optical Information Recording Medium, Optical Information Recording Method, and Optical Information Recording Apparatus Utilizing the Same," that it names Mitsurou Moriya, Osamu Yamaguchi, Yoshihisa Fukushima, and Namio Hirose as inventors, and that it was issued on August 4, 1998. Defendants deny, however, that the '487 patent was duly and legally issued. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 14 of the Complaint, and therefore deny the same.

15. Defendants deny the allegations in Paragraph 15 of the Complaint.

16. Defendants deny the allegations in Paragraph 16 of the Complaint.

17. Defendants deny the allegations in Paragraph 17 of the Complaint.

18. The responses to paragraphs 1-7 are incorporated herein by reference, in response to Paragraph 18 of the Complaint.

19. Defendants admit that U.S. Patent No. RE37,185 (the '185 patent) bears the title "Optical Head," that it names Isao Satoh, Sadao Mizumo, and Noboru Itoh as inventors, and that it was issued on May 22, 2001. Defendants deny, however, that the '185 patent was duly and legally issued. Defendants lack sufficient information to admit or deny the remaining allegations in Paragraph 19 of the Complaint, and therefore deny the same.

20. Defendants deny the allegations in Paragraph 20 of the Complaint.

21. Defendants deny the allegations in Paragraph 21 of the Complaint.

22. Defendants deny the allegations in Paragraph 22 of the Complaint.

## AFFIRMATIVE DEFENSES

23. Defendants hereby state the following affirmative defenses to MEI's claims of infringement of the '132 patent, the '487 patent, and the '185 patent (collectively, "the asserted patents").

### First Affirmative Defense (Noninfringement)

24. Defendants have not infringed and are not infringing any claim of the asserted patents, either directly or indirectly.

### Second Affirmative Defense (Invalidity)

25. The claims of the asserted patents are invalid, void, and/or unenforceable for failure to comply with the conditions and requirements of patentability set forth in the patent statute and rules, Title 35 of the United States Code and Title 37 of the Code of Federal Regulations, and associated rules and law, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and 251.

### Third Affirmative Defense (Laches)

26. The relief that MEI seeks through this action is barred by the equitable doctrine of laches.

### Fourth Affirmative Defense (Inequitable Conduct)

27. The asserted patents are unenforceable due to inequitable conduct during their prosecution in the United States Patent and Trademark Office (the Patent Office), as set forth in the following paragraphs.

A.  **The '132 Patent**

28. The '132 patent is unenforceable due to inequitable conduct. For example, during the pendency of the application that matured into the '132 patent, at least the named inventors or their representatives (collectively, "the applicants") knew of several prior art references that were material to the patentability of the '132 patent and failed to disclose these references to the Patent Office. The material references that the applicants withheld from the Patent Office include at least Japanese Patent Application Nos. JP-A-61034747, JP-A-62222442, JP-A-62121944, and European Application No. EP-A-0184452.

29. Upon information and belief, the applicants were aware of these references prior to the issuance of the '132 patent, at least because the references were identified in a European Patent Office (EPO) search report. In particular, on June 5, 1989, during the examination of a European counterpart to the '132 patent, and prior to the issuance of the '132 patent, the EPO generated a search report that identified these four prior art references.

30. The applicants did not disclose any of these references to the Patent Office during the pendency of the '132 patent. These references were material to the patentability of the '132 patent, are not cumulative of other information that was disclosed to the Patent Office during the prosecution of the '132 patent, and were withheld from the Patent Office with an intent to deceive.

**B.   The '487 Patent**

31. The '487 patent is unenforceable due to inequitable conduct. For example, during the pendency of the application that matured into the '487 patent, at least the named inventors or their representatives (collectively, "the applicants") knew of several prior art references that were material to the patentability of the '487 patent and failed to disclose these references to the Patent Office. The material references that the applicants withheld from the Patent Office include at least JP7-141786, JP60-067061, and JP62-097179.

32. The applicants were aware of these references prior to the issuance of the '487 patent, at least because the references were identified to the applicants by the Japanese Patent Office (JPO). In particular, while the application for the '487 patent was pending, the JPO cited these and other references as material prior art against the Japanese counterpart application to the '487 patent.

33. The applicants did not disclose any of these references to the Patent Office during the pendency of the '487 patent. These references are material to the patentability of the '487 patent, are not cumulative of other information that was disclosed to the Patent Office during the prosecution of the '487 patent, and were withheld from the Patent Office with an intent to deceive.

### C. The '185 Patent

34. The '185 patent is unenforceable due to inequitable conduct. For example, during the pendency of the application that matured into the '185 patent, at least the named inventors or their representatives (collectively, "the applicants") knew of several prior art references that were material to the patentability of the '185 patent and failed to disclose these references to the Patent Office. The material references that the applicants withheld from the Patent Office include at least U.S. Patent No. 4,773,052 (the '052 patent), U.S. Patent No. 4,701,032 ('032 patent), JP 52-153705 (JP '705 patent), JP 60-125945 (JP '945 patent), JP 62-250530 (JP '530 patent), JP 63-313379 (JP '379 patent), JP 64-027046 (JP '046 patent), an excerpt from a book published in 1989 entitled "Rewriteable Laser Disc Material," an excerpt from a book published in 1989 entitled "Laser Discs," an article entitled "Laser Disc System" published in a Japanese journal in November 1981, JP 60-32142, JP 61-210531, an excerpt from a book published in 1988 entitled "New Media Technology Series -- Laser Disc," and a 1986 Nikkei Electronics article excerpt.

35. The applicants were aware of these references prior to the issuance of the '185 patent, at least because the references were identified to the applicants by the EPO and the JPO. In particular, two of these references, the '052 patent and the '032 patent, were cited by the EPO during the examination of the applications for EP 0 862 165 and EP 0 862 166, both of which were European counterparts of the '185 patent. Moreover, the abstract of the JP '705 patent was cited by the EPO in the European Search Report for EP 0 452 953, which also is a European counterpart of the '185 patent. All three references were cited by the EPO prior to the issuance of the '185 patent. In addition, prior to the issuance of the '185 patent, the JPO cited the JP '945 patent, the JP '530 patent, the JP '379 patent, and the JP '046 patent as prior art during the prosecution of a Japanese counterpart application. The remaining references listed above were cited prior to the issuance of the '185 patent during opposition proceedings against the Japanese counterpart patent, including the oppositions numbered 9-75644-1, 9-75644-3, and 9-75644-4.

36. The applicants did not disclose any of these references to the Patent Office

during the pendency of the '185 patent. These references are material to the patentability of the claims in the '185 patent, are not cumulative to the information disclosed during the prosecution of the '185 patent, and were withheld from the Patent Office with an intent to deceive. Moreover, one or more of these references contradicts arguments that the applicants made to the Patent Office in order to overcome prior art cited during the prosecution of the '185 patent.

### Fifth Affirmative Defense (License)

37. The activities alleged to constitute infringement are covered by one or more licenses to the asserted patents.

### Sixth Affirmative Defense (Patent Misuse)

38. Defendants incorporate by reference the allegations in paragraphs 27-36, above.

39. Upon information and belief, MEI has committed patent misuse through its licensing behavior, its activities in connection with standard-setting organizations, its activities in connection with patent pooling arrangements relating to the asserted patents, and/or because it has attempted to license and/or enforce the asserted patents even thought it knew or should have known them to be invalid and/or unenforceable, as set forth in paragraphs 27-36.

40. The asserted patents are unenforceable as a result of MEI's patent misuse.

### COUNTERCLAIMS

Defendants assert the following counterclaims against MEI.

### Parties

1. CMC is a corporation organized and existing under the laws of Taiwan, ROC, with its principal place of business located at 53 W. Ming Chuan Rd., 15th Floor, Taipei, Taiwan, R.O.C.

2. Hotan is a corporation organized and existing under the laws of California, with its principal place of business located at 751 North Canyons Parkway, Livermore, California.

3. KHypermedia is a corporation organized and existing under the laws of California, with its principal place of business located at 789 North Canyons Parkway, Livermore, California.

4. Plaintiff MEI is a Japanese corporation with its principal place of business in Kadoma-shi, Osaka, Japan.

## Jurisdiction and Venue

5. This is an action for declaratory relief for which this Court has jurisdiction under 15 U.S.C. §§ 1331, 1338, and 2201.

6. This Court has personal jurisdiction over MEI at least by virtue of MEI expressly submitting to the jurisdiction of the Court by filing this action for patent infringement. In addition, upon information and belief, MEI has conducted and continues to conduct business within the State of California and in this District relating to its assertion and exploitation of the asserted patents.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because MEI is subject to personal jurisdiction in this District, because MEI is an alien, and because a substantial part of the events giving rise to the counterclaims have occurred in this District.

8. An actual case or controversy exists between the parties by virtue of the allegations raised in MEI's Complaint regarding the alleged patent infringement by Defendants and by virtue of Defendant's affirmative defenses.

## First Counterclaim (Declaratory Judgment of Non-Infringement)

9. Defendants incorporate by reference the allegations in paragraphs 1-8 of the Counterclaims, above.

10. MEI asserts in this litigation that Defendants have infringed and are infringing the asserted patents.

11. Defendants have not infringed nor are they currently infringing any claim of the asserted patents.

12. Accordingly, Defendants seek a judgment declaring that they have not infringed and currently are not infringing any claim of the asserted patents, either directly, contributorily, or by inducement.

**Second Counterclaim (Declaratory Judgment of Invalidity)**

13. Defendants incorporate by reference the allegations in paragraphs 1-8 of the Counterclaims, above.

14. MEI asserts in this litigation that Defendants have infringed and are infringing the asserted patents and that the asserted patents were duly and legally issued.

15. The asserted patents are invalid for failure to meet the conditions for patentability set forth in Title 35 of the United States Code and Title 37 of the Code of Federal Regulations and associated rules and law, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and 251.

16. Accordingly, Defendants seek a judgment declaring that the asserted patents are invalid.

**Third Counterclaim (Declaratory Judgment of Unenforceability for Inequitable Conduct)**

17. Defendants incorporate by reference the allegations in paragraphs 1-8 of the Counterclaims, above.

18. MEI asserts in this litigation that Defendants have infringed and are infringing the asserted patents.

19. The asserted patents are unenforceable at least because the inventors and/or their representatives committed inequitable conduct before the Patent Office during prosecution of the asserted patents.

A. **The '132 Patent**

20. The '132 patent is unenforceable due to inequitable conduct. For example, during the pendency of the application that matured into the '132 patent, at least the named inventors or their representatives (collectively, "the applicants") knew of several prior art references that were material to the patentability of the '132 patent and failed to disclose these references to the Patent Office. The material references that the applicants withheld from the

1  Patent Office include at least Japanese Patent Application Nos. JP-A-61034747, JP-A-62222442,
2  JP-A-62121944, and European Application No. EP-A-0184452.
3        21.    Upon information and belief, the applicants were aware of these references
4  prior to the issuance of the '132 patent, at least because the references were identified in a
5  European Patent Office (EPO) search report.  In particular, on June 5, 1989, during the
6  examination of a European counterpart to the '132 patent, and prior to the issuance of the '132
7  patent, the EPO generated a search report that identified these four prior art references
8        22.    The applicants did not disclose any of these references to the Patent Office
9  during the pendency of the '132 patent.  These references were material to the patentability of the
10 '132 patent, are not cumulative of other information that was disclosed to the Patent Office during
11 the prosecution of the '132 patent, and were withheld from the Patent Office with an intent to
12 deceive.

**B.    The '487 Patent**

13       23.    The '487 patent is unenforceable due to inequitable conduct.  For example,
14 during the pendency of the application that matured into the '487 patent, at least the named
15 inventors or their representatives (collectively, "the applicants") knew of several prior art
16 references that were material to the patentability of the '487 patent and failed to disclose these
17 references to the Patent Office.  The material references that the applicants withheld from the
18 Patent Office include at least JP7-141786, JP60-067061, and JP62-097179.
19       24.    The applicants were aware of these references prior to the issuance of the '487
20 patent, at least because the references were identified to the applicants by the Japanese Patent
21 Office (JPO).  In particular, while the application for the '487 patent was pending, the JPO cited
22 these and other references as material prior art against the Japanese counterpart application to the
23 '487 patent.
24       25.    The applicants did not disclose any of these references to the Patent Office
25 during the pendency of the '487 patent.  These references are material to the patentability of the
26 '487 patent, are not cumulative of other information that was disclosed to the Patent Office during

the prosecution of the '487 patent, and were withheld from the Patent Office with an intent to deceive.

## C. The '185 Patent

26. The '185 patent is unenforceable due to inequitable conduct. For example, during the pendency of the application that matured into the '185 patent, at least the named inventors or their representatives (collectively, "the applicants") knew of several prior art references that were material to the patentability of the '185 patent and failed to disclose these references to the Patent Office. The material references that the applicants withheld from the Patent Office include at least U.S. Patent No. 4,773,052 (the '052 patent), U.S. Patent No. 4,701,032 ('032 patent), JP 52-153705 (JP '705 patent), JP 60-125945 (JP '945 patent), JP 62-250530 (JP '530 patent), JP 63-313379 (JP '379 patent), JP 64-027046 (JP '046 patent), an excerpt from a book published in 1989 entitled "Rewriteable Laser Disc Material," an excerpt from a book published in 1989 entitled "Laser Discs," an article entitled "Laser Disc System" published in a Japanese journal in November 1981, JP 60-32142, JP 61-210531, an excerpt from a book published in 1988 entitled "New Media Technology Series -- Laser Disc," and a 1986 Nikkei Electronics article excerpt.

27. The applicants were aware of these references prior to the issuance of the '185 patent, at least because the references were identified to the applicants by the EPO and the JPO. In particular, two of these references, the '052 patent and the '032 patent, were cited by the EPO during the examination of the applications for EP 0 862 165 and EP 0 862 166, both of which were European counterparts of the '185 patent. Moreover, the abstract of the JP '705 patent was cited by the EPO in the European Search Report for EP 0 452 953, which also is a European counterpart of the '185 patent. All three references were cited by the EPO prior to the issuance of the '185 patent. In addition, prior to the issuance of the '185 patent, the JPO cited the JP '945 patent, the JP '530 patent, the JP '379 patent, and the JP '046 patent as prior art during the prosecution of a Japanese counterpart application. The remaining references listed above were cited prior to the issuance of the '185 patent during opposition proceedings against the Japanese counterpart patent, including the oppositions numbered 9-75644-1, 9-75644-3, and 9-75644-4.

28. The applicants did not disclose any of these references to the Patent Office during the pendency of the '185 patent. These references are material to the patentability of the claims in the '185 patent, are not cumulative to the information disclosed during the prosecution of the '185 patent, and were withheld from the Patent Office with an intent to deceive. Moreover, one or more of these references contradicts arguments that the applicants made to the Patent Office in order to overcome prior art cited during the prosecution of the '185 patent.

29. Accordingly, Defendants seek a judgment declaring that the asserted patents are unenforceable due to inequitable conduct.

**Fourth Counterclaim (Declaratory Judgment of Unenforceability for Patent Misuse)**

30. Defendants incorporate by reference the allegations in paragraphs 1-8 and 17-29 of the Counterclaims, above.

31. Upon information and belief, MEI has committed patent misuse through its licensing behavior, its activities in connection with standard-setting organizations, its activities in connection with patent pooling arrangements relating to the asserted patents, and/or because it has attempted to license and/or enforce the asserted patents even thought it knew or should have known them to be invalid and/or unenforceable, as set forth in Counterclaim Paragraphs 17-29. The asserted patents are unenforceable as a result of MEI's patent misuse.

32. Accordingly, Defendants seek a judgment declaring that the asserted patents are unenforceable due to patent misuse.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and grant the following relief:

1. Dismissal with prejudice of MEI's claims against Defendants and an order that MEI take nothing as a result of the Complaint;

2. Judgment that each of MEI's asserted patents are not infringed by Defendants, either directly or indirectly;

3. Judgment that each of MEI's asserted patents are invalid;

4. Judgment that each of MEI's asserted patents are unenforceable by reason of inequitable conduct and/or patent misuse;

5. Judgment that MEI's requested relief is barred by laches;

6. An order requiring that MEI pay all of the Defendants' costs associated with this suit, including attorney fees incurred in defense pursuant to 35 U.S.C. § 285;

7. Any and all other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendants request a trial by jury in this matter on all issues so triable.

Dated: September 14, 2006

SONNENSCHEIN NATH & ROSENTHAL LLP

By _____
STEVEN H. FRANKEL

Attorneys for Defendants
CMC Magnetics Corp., Hotan Corp., and KHypermedia Corp.