IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATSUSHITA ELECTRIC INDUSTRIAL CO. LTD, <br><br> Plaintiff, <br><br> v. <br><br> CMC MAGNETICS CORPORATION ET. AL., <br><br> Defendant. | No. C 06-04538 WHA <br><br> **ORDER DENYING MATSUSHITA'S MOTION TO DISMISS; MOTION TO STRIKE; AND GRANTING MOTION FOR A MORE DEFINITE STATEMENT** |

**INTRODUCTION**

In this patent-infringement action, plaintiff Matsushita Electric Industrial Co., Ltd. moves to dismiss a patent-misuse counterclaim by defendants CMC Magnetics Corp., Hotan Corp., and KHypermedia Corp. Matsushita also moves to strike CMC's affirmative defense of patent misuse. In the alternative, Matsushita moves for a more definite statement of the counterclaim of patent misuse. This order holds that CMC adequately pled its patent-misuse counterclaim and affirmative defense of patent misuse. This order holds that a more definite statement is needed. Matsushita's motion to dismiss and motion to strike are **DENIED**; Matsushita's motion for a more definite statement is **GRANTED**.

**STATEMENT**

Matsushita is the holder of the three patents in suit, which relate to the manufacture and use of optical information recording media, including recordable DVD discs. The first patent, U.S. Patent No. 4,847,132 ("the '450 patent") issued on July 11, 1989. Matsushita's second

1  patent, U.S. Patent No. 5,790,487 ("the '487 patent") issued on August 4, 1998.  The third

2  patent, U.S. Patent No. RE 37,185 ("the '185 patent") issued on May 22, 2001.  The '185 patent

3  is a reissue of U.S. Patent No. 5,148,421, originally issued on September 15, 1992.  Each of the

4  three patents was assigned to Matsushita.

5  On July 26, 2006, Matsushita filed the instant lawsuit alleging that CMC, Hotan, and

6  KHypermedia infringed the three patents in issue.  CMC filed its answer and counterclaims on

7  September 14, 2006.  CMC alleged in its Fourth Counterclaim that Matsushita (Counterclaims ¶

8  31):

> has committed patent misuse through its licensing behavior, its activities in connection with standard-setting organizations, its activities in connection with patent pooling arrangements relating to the asserted patent, and/or because it has attempted to license and/or enforce the asserted patents even thought [sic] it knew or should have known them to be invalid and/or unenforceable, as set forth in Counterclaim Paragraphs 17-29.

In its Sixth Affirmative Defense, CMC also asserted an affirmative defense of patent misuse (Answer ¶ 39).  CMC alleged that Matsushita knowingly withheld pertinent prior art references from the Patent and Trademark Office during prosecution of the three patents in suit and identified several withheld references for each of the three patents in suit (Counterclaims ¶¶ 28–36).  CMC also alleged that Matsushita committed patent misuse by enforcing and licensing these patents (Answer ¶ 39, Counterclaims ¶ 31).

**ANALYSIS**

Matsushita now moves to dismiss CMC's counterclaim of patent misuse.  Matsushita also moves to strike CMC's affirmative defense of patent misuse.  In the alternative, Matsushita moves for a more definite statement of CMC's patent-misuse counterclaim.

**1.    MOTION TO DISMISS.**

A motion to dismiss under FRCP 12(b)(6) tests for legal sufficiency of the claims alleged in the complaint.  A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "All allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the

2

non-moving party, but conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir., 2004).

CMC Fourth Counterclaim alleges patent misuse and requests a declaratory judgment that Matsushita's patents in suit are unenforceable (Counterclaims ¶ 31). The Federal Circuit has explained:

> The defense of patent misuse arises from the equitable doctrine of unclean hands, and relates generally to the use of patent rights to obtain or coerce an unfair commercial advantage. Patent misuse relates primarily to a patentee's action that affect competition in unpatented goods or that otherwise extend economic effect beyond the scope of the patent grant.

*C.R. Bard v. M3 Systems*, 157 F.3d 1340, 1372 (Fed. Cir. 1998) (citing *Mallinckrodt Inc. v. Medipart, Inc.*, 976 F.2d 700, 703-704 (Fed. Cir. 1992)). Patent misuse requires "that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal' scope of the patent grant with anticompetitive effect." *Windsurfing Int'l. Inc. C. AMF, Inc.*, 782 F.2d. 995, 1001 (Fed. Cir. 1986) (quoting *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 343 (1971)).

"Patent misuse is viewed as a broader wrong than antitrust violation because of the economic power that may be derived from the patentee's right to exclude." *C.R. Bard*, 157 F.3d at 1372. Accordingly, "misuse may arise when the conditions of antitrust violation are not met." Under FRCP 8(a), the complainant is required to "give a short and plain statement of the claim showing that the pleader is entitled to relief." Patent misuse counterclaims are judged under the standard of FRCP 8(a). *See Raychem Corp. v. PSI Commc'n.*, No. C-93-20920, 1995 WL 108193, at *4 (N.D. Cal. Mar. 6, 1995).

Here, CMC has alleged sufficient facts to show that it is entitled to relief. While its allegations are admittedly brief, CMC pointed to specific conduct by Matsushita that could support a claim for patent misuse, namely, its licensing practices, participation in standard-setting organizations, and participation in patent pools. Furthermore, CMC incorporates by reference allegations from its other counterclaims which allege that Matsushita obtained its patents in suit through inequitable conduct.

1    Matsushita argues that CMC's counterclaim refers only to legal activities, such as
2 patent-pooling, licensing, and participating in standard-setting organizations. Matsushita
3 overstates its argument. Patent pools can have procompetitive effects and reduce transaction
4 costs, as the Federal Circuit has noted. *U.S. Philips Corp. v. Int'l Trade Comm'n.*, 424 F.3d
5 1179, 1198 (Fed. Cir. 2005). In determining whether patent misuse has occurred, "a court must
6 determine if that practice is 'reasonably within the patent grant, *i.e.*, that it relates to subject
7 matter within the scope of the patent claims.'" *Virginia Panel Corp. v. Mac Panel Co.*, 133 F.3d
8 860, 869 (Fed. Cir. 1997) (quoting *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 708 (Fed.
9 Cir. 1992)). Similarly, participation in a standard-setting organization has in the past been
10 recognized as a counterclaim for unenforceability of a patent. *See Rambus Inc. v. Infineon
11 Tech. Inc.*, 318 F.3d 1081, 1086 (Fed. Cir. 2003). Even though both of these activities are often
12 lawful, they are not always so, and can form the basis of a patent misuse counterclaim.

13    Also, Matsushita asserts that patent misuse can only be based on certain, specific
14 practices. This view is incorrect. Some practices, such as some tying licenses or a patentee's
15 requiring royalties after the patent has expired, can be per se patent misuse. *Virginia Panel
16 Corp.*, 133 F.3d at 869. The Federal Circuit has not stated that there is a finite list of patent
17 misuse practices. Patent misuse claims must be analyzed under the rule of reason to determine
18 whether the practice is within the scope of the patent claims.

19    Matsushita lists several decisions where patent misuse claims have been dismissed
20 under Rule 12(b)(6). Those cases are either not binding here, distinguishable from this claim,
21 or both. First, unlike in *Takeda Chem. Indus. Ltd., v. Alphapharm Pty., Ltd.*, CMC has
22 identified conduct which it believes to constitute patent misuse. No. 04-1966, 2004 WL
23 1872707 at *1-2 (S.D.N.Y. Aug. 19, 2004). In *Aktiebolag v. Genpharm, Inc.*, the claimant
24 merely asserted that there was an unlawful attempt to extend patent rights. No. 98 Civ. 3657,
25 2000 WL 257119, at *2 (S.D.N.Y. Mar. 8, 2000). Here, CMC has identified conduct by
26 Matsushita on which it bases its claim. Finally, in *Raychem Corp. v. PSI Telecomms., Inc.*, the
27 defendant failed to assert any practices which could constitute patent misuse. No. C-93-20920,
28

4

1995 WL 108193, at *4 (N.D. Cal. Mar. 6. 1995).  As stated above, CMC has asserted practices that could support a claim of patent misuse.

CMC has sufficiently pled their counterclaim for patent misuse.

### 2. MOTION TO STRIKE AFFIRMATIVE DEFENSE.

Matsushita also moves to strike CMC's affirmative defense of patent misuse.  Pursuant to a motion under FRCP 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  FRCP 12(f) is a means by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Motions to strike are viewed negatively under the Federal Rules.  Accordingly, "motions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991) (citations omitted).

The Federal Circuit has defined the affirmative defense of patent misuse as relating "primarily to a patentee's actions that affect the competition in unpatented goods or that otherwise extend the economic effect beyond the scope of the patent grant."  *C.R. Bard*, 157 F.3d at 1372.  Here, CMC has pled sufficient facts that Matsushita has committed patent misuse through its actions in licensing and enforcing its patents, and its participation in standard-setting organizations and patent pools.  Matsushita has failed to meet its burden of showing that CMC has pled an insufficient defense, or that its defense bears no relation to the subject matter of this litigation.  Striking the defense is unwarranted at this time.

### 3. MOTION FOR A MORE DEFINITE STATEMENT.

In the alternative, Matushita moves for a more definite statement of CMC's patent-misuse counterclaim.  Under FRCP 12(e), "if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  This rule must be read in light of FRCP 8(a), which requires only that the

1 complaint contain "a short and plain statement of the claim showing that the pleader is entitled
2 to relief." Because of the limited pleading requirements of the Federal Rules, it has been noted
3 that "[m]otions for a more definite statement are viewed with disfavor, and are rarely granted."
4 *Margarita Cellars v. Pac. Coast Packaging*, 189 F.R.D. 875, 878 (N.D. Cal. 1998). However,
5 "even though a complaint is not defective for failure to designate the statute or other provision
6 of law violated, the judge may, in his discretion . . . require such detail as may be appropriate in
7 the particular case . . . ." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

8 CMC has stated a sufficient claim of patent misuse, but its complaint lacks sufficient
9 detail for Matsushita to respond adequately. CMC has alleged some conduct that could
10 constitute patent misuse. From the pleadings, however, it is unclear exactly which factual and
11 legal theories of patent misuse CMC intends to pursue, and in turn under which standard
12 Matsushita's conduct will be judged. The vagueness of CMC's pleadings makes it difficult for
13 Matsushita to frame a responsive pleading and for both parties to conduct focused and efficient
14 discovery. Accordingly, this court orders Matsushita to make a more definite statement of its
15 counterclaim. It is worth noting that at the hearing, counsel was able to elaborate on the
16 theories alleged. His explanation involved tying arrangements. The pleadings make no
17 mention of tying arrangements. The Court is convinced that a more definite statement (of
18 approximately three pages in length) is warranted.

### CONCLUSION

20 For the foregoing reasons, Matsushita's motion to dismiss, and motion to strike are
21 **DENIED**. Matsushita's motion for a more definite statement is **GRANTED**.

23 **IT IS SO ORDERED.**

25 Dated: November 13, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE