IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATSUSHITA ELECTRIC INDUSTRIAL CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> CMC MAGNETICS CORPORATION, KHYPERMEDIA CORPORATION, and HOTAN CORPORATION, <br><br> Defendants. | No. C 06-04538 WHA <br><br> **ORDER DENYING MOTION TO FILE A SECOND AMENDED ANSWER AND COUNTERCLAIM** |

**INTRODUCTION**

In this patent-infringement action, defendant CMC Magnetics Corporation moves to file a second amended answer adding a patent-infringement counterclaim. The proposed counterclaim is based on an interest in a patent recently acquired from a third party. Defendant's motion is **DENIED**.

**STATEMENT**

Plaintiff Matsushita Electric Industrial Co. holds the three patents-in-suit, which relate to the manufacture and use of optical information recording media, including recordable DVD discs. The first patent, United States Patent No. 4,847,132, was drawn to a protective layer applied to an optical recording medium. Matsushita's second patent, United States Patent No. 5,790,487, was drawn to an optical recording medium and an optical information recording

method. The third patent, United States Patent No. RE 37,185, was drawn to the optical pickup head of an information recording and reproducing apparatus. Each of the three patents was assigned to Matsushita. The '487 patent and the '185 patent were allegedly part of a patent pool related to DVD technology (Second Amd. Ans. ¶¶ 58–59).

On July 26, 2006, Matsushita filed the instant action against defendants CMC, Hotan Corporation, and Khypermedia Corporation. In their answer, defendants presented patent misuse and inequitable conduct defenses and counterclaims. Matsushita moved to strike the defenses and dismiss the counterclaims. An order dated November 13, 2006, denied plaintiff's motion but required defendants to make a more definite statement of their patent-misuse defense and counterclaim. Defendants filed their first amended answer on November 29, 2006. The next day, CMC filed this motion seeking leave to file a second amended answer to add a patent-infringement counterclaim against Matsushita and its subsidiary Panasonic of North America.

CMC executed two agreements dated November 1, and November 15, 2006, and a side letter dated November 23, 2006, with the Industrial Technology Research Institute of Taiwan (Green Decl. Exh. 2–4). These agreements purported to give CMC an ownership interest in United States Patent No. 6,188,132 ("the laser diode patent") which was drawn to a two-wavelength laser diode package for use in the read-write head of an optical drive that could read two different types of storage media.[*] The reasoning for entering into these agreements was as follows (Green Decl. Exh. 3, ¶ 1.2):

> to seek to increase bargaining chips of Party A [CMC] during this infringement lawsuit and as required by Party A's litigation strategy, Party A sent a letter to Party B [ITRI] and the [Taiwanese] Ministry of Economic Affairs to indicate the need to be assigned partial ownership of this patent.

The two agreements and the side letter did not fully supersede one another and some provisions are inconsistent among the three documents. For example, the agreement dated November 1, 2006, stated that both parties would have full and independent rights to practice, assign, and enforce agreements on the patents (Green Decl. Exh. 2, ¶ 2.3). The section titled "Conditions

---

[*] Because one of Matsushita's patents-in-suit has already been referred to as "the '132 patent," this order refers to United States Patent No. 6,188,132 as "the laser diode patent."

2

for Use and Special Clauses" in the agreement dated November 15, 2006, also appeared to have addressed the same issue. It stated (*id.* at Exh. 3, ¶ 3.9.1):

> Except in accordance with the provisions of Articles 3.1, 3.3, and 3.4 of this agreement, prior to reaching any agreement and executing a necessary contract with Party B [ITRI], Party A [CMC] *shall not implement this patent on its own*, shall not deal directly with the filing of relevant objections with respect to this patent and *shall refrain from granting any license and making assignment to, holding in trust for and establishing a pledge for any third party* with respect to this patent or exercising the rights under this patent.

The side letter dated November 23, 2006, indicated that CMC has the right to grant licenses to the laser diode patent (*id*. at Exh. 4).

The agreements and side letter also addressed parties' rights in litigation. The first agreement stated that ITRI has no right to "bring or participate in any legal action for patent infringement concerning the Assigned Patent Rights or to participate in the defense of any legal action challenging the validity and enforceability of the Assigned Patent Rights" (*id*. at Exh. 2, ¶ 2.4). The second agreement allowed CMC to use the laser diode patent against Matsushita, but CMC would have to give written notice to ITRI if it wished to use the laser diode patent defensively if sued by another third party (*id.* at Exh. 3, ¶ 3.1–3.3). If CMC wanted to file its own patent-infringement action against a third party, it would first have to obtain ITRI's permission (*id*. at ¶ 3.4).

On December 7, 2006, ITRI executed a Patent Ownership Rights Transfer in Patent and Trademark Office along with a recordation of assignment naming CMC as the assignee, subject to the terms and conditions in the agreements (Green Reply Decl. Exh. 12).

According to the case management scheduling order, the last day to seek leave to amend pleadings or add new parties was November 30, 2006. CMC filed this motion on that day.

In brief, it is abundantly clear that the motivation behind the series of ever-changing and inconsistent agreements was to try to acquire a patent to assert against plaintiff as a counterclaim, *i.e.*, as stated in the agreements themselves, as a "bargaining chip." There is nothing per se wrong in this. It is a litigation tactic used from time to time. But, if done, it must be done right.

3

**ANALYSIS**

Leave to file the proposed counterclaim is denied for the following two reasons.

### 1. SUPPLEMENTAL PLEADINGS UNDER RULE 15(d).

Rule 15(d) applies to claims that accrue after an initial complaint is filed. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998). "Upon motion of a party, the court may, upon reasonable notice and on such terms that are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FRCP 15(d). "While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action." *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). Supplemental claims should be allowed where they will "promote the speedy and economical disposition of a controversy." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Matsushita argues that CMC's proposed counterclaim should be governed by Rule 15(d) because it is a supplemental pleading, not an amended pleading under Rule 15(a). Matsushita is correct. CMC asserts a new claim for patent infringement which it acquired in November 2006, after CMC had first served its answer and counterclaims. CMC does not and cannot dispute that it had no preexisting patent-infringement claim against Matsushita. Thus, CMC's claim matured after the pleading was served and it is governed by Rule 15(d).

Matsushita contends that CMC is trying to add a separate, distinct, and new claim because the laser diode patent dealt with totally different technology. The laser diode patent dealt with hardware, so the argument goes, while Matsushita's patents dealt with optical storage media. As mentioned above, the '132 and '487 patents were drawn to optical recording media, and the '185 patent was drawn to an optical pickup head. The laser diode patent was drawn to a read-write head that could read two different types of storage media. The proposed counterclaim involves an entirely different product than Matsushita's infringement claims. Matsushita's complaint accused CMC's optical discs of infringing, while CMC's proposed counterclaim accuses Matsushita's DVD players of infringing.

4

In response, CMC cites a number of decisions allowing counterclaims. All are distinguishable. In *Micron Tech, Inc. v. Rambus, Inc.*, 409 F. Supp.2d 552, 558 (D. Del. 2006), the district court permitted Rambus to add claims based on patents drawn to the same technology and were issued while the action was stayed pending appeal in a related case. That is not the case here. The laser diode patent covers technology and products different from Matsushita's patents. *Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988), held that claims arising from the same consent decree were not new claims and so could be added by supplemental pleadings. Here, CMC is not alleging a claim based on the same set of circumstances; it is adding a claim based on different technology and products. In *Intel Corp. v. Amberwave Systems Corp.*, 233 F.R.D. 416, 418–419 (D. Del. 2005), the district court allowed the plaintiff to add patent-infringement counterclaims, but those were based on applications that were named in the complaint and later issued as patents during the pendency of the action. Here, as stated, CMC only executed the agreements with ITRI in November. This motion marks the first mention of the laser diode patent in this action. Similarly, in *Abbott Laboratories v. Inverness Medical Technologies*, 2002 WL 1906533, *3 (D. Mass. 2002), the plaintiff was permitted to add an infringement claim based on a patent that issued during the pendency of the lawsuit and had claims similar to the other patents asserted. Finally, defendant is correct in characterizing *Rowe v. U.S. Fidelity and Guaranty*, 421 F.2d 937, 942–43 (4th Cir. 1970), as contradicting the Ninth Circuit's later decisions that forbid the addition of a new cause of action by supplemental pleading. Fourth Circuit law cannot trump Ninth Circuit law in this venue.

Plaintiff has the better of the argument. The two technologies are related only in a very broad sense. The addition of CMC's counterclaim would inject an additional layer of complexity and delay into an already complex action. In claim construction, attention would be diverted from Matsushita's patents to construe terms in an unrelated patent. At trial, a jury would have to learn about both optical storage media and DVD players. In their briefs, both parties indicate the need to either adjust our case schedules or bifurcate the counterclaim entirely if the counterclaim were allowed to go forward. Adding the counterclaim would not

promote a quick or economical resolution to this case. Rule 15(d) bars the proposed amendment. This is dispositive.

### 2. FUTILITY AND STANDING.

There is a second and independent ground for denial of the motion. Amendment to the pleadings is not allowed if the amendment is futile and would be subject to dismissal. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

"Standing to sue is a threshold requirement of every federal action." The party who brings the action bears the burden of proving that it has standing. *Sicom Sys. Ltd. v. Agilent Tech. Inc.,* 427 F.3d 975–976 (Fed. Cir. 2005). An assignee has standing to sue on its own if the patent owner has assigned the entire patent right, an undivided part of the right, or all rights to a geographical region. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995). An exclusive license can be treated as an assignment for standing purposes if the license conveys all substantial rights in the patent. *Sicom*, 427 F.3d at 975–976. If CMC received either an undivided ownership interest or an exclusive license conveying all substantial rights, it has standing to assert a claim for infringement of the laser diode patent.

"Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." *Waterman v. McKenzie*, 138 U.S. 252, 256 (1891). CMC contends that the three agreements give it an undivided co-ownership interest and that it stands on equal footing with ITRI. In its view, both ITRI and CMC can practice the laser diode patent world-wide. Both can grant non-exclusive licenses. Both must honor the other's non-exclusive licenses. They must seek permission from one another before transferring their rights or granting an exclusive license.

If these were the only operative provisions, CMC might have managed to cobble together an ownership interest through the two agreements and the side letter. Upon even a casual inspection, CMC's rights are severely restricted. The second agreement (dated November 15, 2006), states that CMC needs ITRI's permission to even "implement" the laser diode patent. The side letter then switched gears entirely and referred to CMC as a co-owner.

6

Even when read charitably, the two agreements and the side letter's scattershot definitions of CMC's rights do not indicate that CMC has an undivided ownership interest. CMC can identify no right that CMC clearly has that ITRI does not share, thus CMC does not have independent standing as an assignee.

CMC could still have standing if the agreements conferred all substantial patents rights to them as a licensee. The retention of substantial rights to make, use or sell the invention is inconsistent with a transfer of full rights. *See Abbott Labs*., 47 F.3d at 1132. CMC concedes that ITRI retains the right to practice the laser diode patent worldwide, but still argues that the agreements and the side letter place it and ITRI on equal footing as co-owners. As stated above, CMC's right to practice (*i.e.* to implement) the laser diode patent is doubtful at best. ITRI can still enforce the patent, although it has promised to stay out of any lawsuit with Matsushita. CMC, however, must honor any prior licenses or contracts ITRI has with respect to the laser diode patent. It is not clear what these obligations, if any, entail. This, coupled with ITRI's retention of the right to practice and exclude others from practicing the patent, militates against finding that CMC has independent standing to assert the laser diode patent.

"[A] transferee that receives all substantial patent rights from a transferor would never need consent from the transferor to file suit." *Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1344 (Fed. Cir. 2001). Matsushita argues that CMC cannot have an ownership interest or full rights in the laser diode patent because CMC must get ITRI's permission to assert the laser diode patent offensively. The agreement dated November 15, 2006, stated in pertinent part (Green Decl. Exh. 3, ¶ 3.4):

> In the event that Party A [CMC] shall desire to take the initiative in exercising the rights to this patent with respect to any third party other than Matsushita Electric Industrial Co., Ltd., a Japanese business, and another foreign manufacturer (hereinafter referred to as "third party complained of by Party A") — not because it is faced with a patent infringement lawsuit — but in order to conduct consultations or to file an infringement lawsuit, or further uses this patent to grant a non-exclusive and non-transferable license to the third party complained of by Party A, it shall give Party B [ITRI] advance written notice and shall only do so after obtaining Party B's written consent.

Here, the second agreement indicates that CMC must seek ITRI's permission before filing suit against a party other than Matsushita. ITRI has the right to terminate the agreements if CMC

7

does not seek permission before filing suit or before granting a license to a party against which CMC has filed suit. ITRI is not so limited. If ITRI wishes to sue a third party, not only does it not need CMC's permission, CMC must cooperate in the lawsuit (*id*. at ¶ 3.2). If CMC fails to do so, ITRI has the option of terminating the agreement (*id*. at ¶ 3.2.4).

The Federal Circuit recently held that a licensee did not have standing where the licensee could sue for infringement with the licensor's permission, but did not clearly have the right to practice the patent. *Propat Intern. Corp. v. Rpost Inc.*, ___ F.3d ____, 2007 WL 14688, *4 (Fed. Cir. Jan. 4, 2007). Here, CMC's right to practice the laser diode patent is unclear, while ITRI explicitly retains it. Furthermore, in *Propat*, the licensor's ability to veto the licensee's litigation decisions was considered a significant restriction on the licensee's interest in the patent even where the licensee had to exercise veto power reasonably. The instant agreements are even more restrictive of CMC's rights. ITRI can veto CMC's decision in any instance where CMC initiates an action against a third party whether that decision is reasonable or not.

At oral argument, counsel for CMC stated that *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991), was the closest decision on point. In *Vaupel*, however, the licensor retained only the rights to be informed of the progress of litigation, to veto sub-licenses, and to collect a portion of licensing proceeds. Again, CMC has far fewer rights than that. Defendant's reliance on *Sicom* is also misplaced. In that decision, the Federal Circuit held that an assignee did not have standing where it had been given the exclusive right to bring commercial patent-infringement lawsuits. CMC cannot even sift through the cascade of agreements and the side letter to find such a right. It still must ask for ITRI's leave before filing suit against a third party.

CMC contends that, absent contractual agreement to the contrary, "one co-owner of a patent has the right to impede the other co-owner's right to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997). This is true. CMC, however, neglects to mention that in its agreements with ITRI, permission to sue third party is not required on both sides. In the alternative, CMC argues that

8

it effectively has the same veto right if ITRI should choose to sue a third party. Under the agreements, CMC asserts that it has the right to license the patent to any infringer accused by ITRI "in essentially all cases" (Reply at 7). In this scenario, ITRI could file suit against a third party, and CMC could then grant a non-exclusive license to that third party. This is not the same as having to seek permission before filing a lawsuit. In fact, this scenario could possibly trigger ITRI's right to terminate the agreement because CMC has an obligation to cooperate in actions that ITRI brings against third parties (Green Decl. Exh. 3, ¶ 3.2). Licensing the laser diode patent to a third party being sued by ITRI is inimical to cooperation. Simply put, it would allow the third party to infringe. Thus, CMC and ITRI are not on equal footing. CMC does not have independent standing to sue either as a co-owner or as an exclusive licensee.

CMC's argument that ITRI is not a necessary party is contingent on CMC's having independent standing. It does not have independent standing. Adding CMC's patent-infringement counterclaim would be futile as it does not have standing without joining ITRI. It appears under the agreements that CMC cannot even implement the laser diode patent in its own products.

In short, this is nothing more than a litigation gimmick to invent an artificial counterclaim for tactical advantage, *i.e.*, CMC obtained virtually no substantive rights of interest other than the right to use as a counterclaim here or if sued by someone else in patent litigation.

## CONCLUSION

For all the above-stated reasons, CMC's motion for leave to add a patent-infringement counterclaim is **DENIED**.

**IT IS SO ORDERED.**

Dated: January 12, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9