United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> CMC MAGNETICS CORPORATION, HOTAN CORPORATION, and KHYPERMEDIA CORPORATION, <br><br> Defendants. | No. C 06-04538 WHA <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO BIFURCATE TRIAL AND FOR PHASED DISCOVERY, AND VACATING HEARING** |

**INTRODUCTION**

In this patent-infringement action, plaintiff moves to bifurcate trial and proceed with phased discovery. Plaintiff proposes that defendants' patent-misuse counterclaim and affirmative defense based on standard-setting, patent-pooling, and licensing activities should be severed from trial on the rest of the claims and defenses. Plaintiff also proposes to proceed with a phased discovery schedule that would allow only limited discovery on defendants' patent-misuse counterclaims and defenses. Plaintiff has shown that bifurcation may be desirable, but plaintiff has not shown that it is necessary at this time. Accordingly, plaintiff's motion to bifurcate trial is **DENIED** without prejudice to renewing the motion at the final pretrial conference. Plaintiff's motion to proceed with phased discovery is **DENIED**.

**STATEMENT**

On July 26, 2006, plaintiff Matsushita Electric Industrial Company, Ltd., filed this action against defendants CMC Magnetics Corporation, Hotan Corporation, and Khypermedia Corporation. Matsushita's complaint alleged that defendants infringed three of its patents. The first patent, United States Patent No. 4,847,132, was drawn to a protective layer applied to an optical recording medium. Matsushita's second patent, United States Patent No. 5,790,487, was drawn to an optical recording medium and an optical information recording method. The third patent, United States Patent Reissue No. 37,185, was drawn to the optical pickup head of an information recording and reproducing apparatus. Each of the three patents was assigned to Matsushita. The '132 patent and the '487 patents were allegedly part of the DVD 6C standard.

In their answer, defendants presented affirmative defenses of inequitable conduct and patent misuse. They also asserted patent misuse counterclaims alleging *Walker Process*-type sham litigation and antitrust-type counterclaims related to patent-pooling, standard-setting, and licensing activities. Matsushita moved to dismiss the antitrust-type affirmative defenses and counterclaims. Plaintiff's motion was denied, but defendants were required to make a more definite statement of those counterclaims and defenses. Defendants did so in their first amended answer filed on November 29, 2006. Defendants alleged that Matsushita and the other owners of patents in the DVD 6C standard colluded to eliminate competing standards in the field (Amd. Ans. ¶ 52). The patent owners unnecessarily merged two competing DVD standards (*id.* at ¶ 50). Pool members could then charge super-competitive prices for licenses absent a competing standard. Defendants also alleged that Matsushita unlawfully expanded the scope of its patents through these activities and through its licensing of the DVD 6C standard.

Now, during the fact-discovery phase, plaintiff moves to bifurcate trial. Matsushita's patent-infringement claims and defendants' invalidity, inequitable conduct, and *Walker Process*-type patent misuse defenses and counterclaims would proceed first. A separate trial on defendants' patent misuse claims related to standard-setting, patent-pooling, and licensing would be held later if necessary. Additionally, Matsushita moves to establish a phased discovery plan. Discovery on defendants' patent-pooling, standard-setting and licensing

defenses and counterclaims would be limited to two narrow issues: whether or not the defenses and claims are barred by laches, and whether or not Matsushita granted licenses on individual patents.

## ANALYSIS

### 1. MOTION TO BIFURCATE TRIAL.

Under FRCP 42(b), courts have discretion to bifurcate trial in order to avoid prejudice, to promote expedition and economy, or to further convenience. "One of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970). "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." WRIGHT & MILLER, *Federal Practice and Procedure*, § 2388 (2d ed. pocket part 2006). "With respect to both discovery and trial," the moving party has the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

Matsushita argues that its proposal for bifurcating the antitrust counterclaims would conserve resources and simplify the proceedings. Specifically, it argues that those claims would involve different proof and facts. Matsushita also points out that if CMC prevails on its invalidity or non-infringement arguments, a trial on the rest of the defenses and counterclaims would be unnecessary. This is true. It is difficult to see, however, how Matsushita's plan of bifurcating only the antitrust-type counterclaims and defenses would be preferable to bifurcating all inequitable conduct and patent-misuse claims and defenses at a later date. Matsushita also points out that keeping all these issues in a single trial might confuse the jury. It is too early to evaluate this idea. At all events, the risk of jury confusion must be weighed with the risk of inconvenience to the jury caused by a multiplicity of proceedings. Overlap in the evidence as between the two claims may militate in favor of one slightly longer trial rather than two long trials. This is a tough judgment call that will be better informed after all discovery is taken and the expert reports are disclosed.

1 Matsushita compares this action extensively to the facts of *Matsushita Elec. Indus. Co.
2 v. Cinram Int'l., Inc*., 299 F.Supp.2d 370 (D. Del. 2004).  In that decision, Matsushita sued
3 Cinram for infringement of patents in the DVD 6C standard.  Cinram asserted counterclaims
4 alleging that Matsushita and other DVD 6C pool members had cross-licenses with members of
5 another patent pool, the DVD 3C standard.  These agreements, Cinram alleged, foreclosed
6 competition by raising the royalty rates on *both* standards.  The court bifurcated trial separating
7 Cinram's antitrust claims from Matsushita's patent-infringement claims, and allowed discovery
8 to go forward on the limited issue of whether Matsushita granted licenses on the individual
9 patents.  Here, defendants present similar allegations regarding licensing practices, but they also
10 allege the DVD 6C pool foreclosed competition by wiping out competing technology.  This is
11 different sort of anticompetitive conduct that may or may not relate to Matsushita's licensing
12 practices because defendants have alleged theories that do not rest on tying.  They alleged that
13 anticompetitive conduct raised the price on all essential patents because there was no competing
14 standard.  Furthermore, defendants are only inquiring into the formation of one standard where
15 Matsushita was intimately involved in the standard's creation.  Matsushita's attempt to
16 shoehorn this action into the *Cinram* mold does not quite hold up.

17 Plaintiff also argues that under the *Cinram* decision, the issue of whether Matsushita
18 granted licenses on individual patents will be dispositive.  Matsushita again neglects that
19 defendants are proceeding under antitrust theories other than packaged or tied licenses.
20 Because of that, it is not as clear that this will dispose of the counterclaim as it was in *Cinram*.
21 It is also difficult to see how an inquiry into Matsushita's laches defense would dispose so
22 quickly of all other issues involved in this action.  Both parties would still have to inquire into
23 the formation of the DVD 6C standard.  Both would have to conduct discovery into defendants'
24 involvement and contact with the DVD forum.  The *Cinram* decision is instructive from a case-
25 management standpoint, but it is not binding.

26 This case is still at a relatively early stage.  Parties have another five months of fact
27 discovery ahead of them and trial is set for November of this year.  Trial bifurcation at this stage
28 of the proceedings is premature.  Indeed, parties admit that they have taken only a few

4

depositions to date. Matsushita presents good arguments in favor of bifurcation, but they are simply not sufficient at this time to bifurcate trial along the lines it proposes. Bifurcation at this stage would foreclose the possibility of trying the issues at the same time. In the alternative, some other plan for bifurcating might prove more advantageous later in the proceedings. Accordingly, Matsushita's motion to bifurcate trial is **DENIED** without prejudice to being reassessed at the final pretrial conference.

### 2. PHASED DISCOVERY.

Additionally, Matsushita asks that the Court restrict discovery on Matsushita's counterclaims to two "threshold" issues: (1) whether the DVD 6C pool granted individual licenses; and (2) whether CMC's counterclaim is barred by laches. Because this order declines to bifurcate trial, it will also decline to phase discovery. To do otherwise would foreclose the option of a single trial later. Accordingly, Matsushita's motion for phased discovery is **DENIED**.

### CONCLUSION

For all the above-stated reasons, plaintiff's motion to bifurcate trial is **DENIED** without prejudice to being renewed at the final pretrial conference. Plaintiff's motion for phased discovery is **DENIED**. Seeing that no further argument is necessary, the hearing on this matter is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: January 29, 2007

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE